| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br> Rachael E. Banks <br> KOLB CLARE & ARNOLD <br> **Appearing Specially** <br> 35 Journal Square, Ste. 419 <br> Jersey City, NJ 07306 <br> Phone: (201) 253-1968 <br> e-mail: rbanks@kcalegal.com <br> Attorneys for Hackensack University Medical Center, as plan administrator and sponsor of the Hackensack University Medical Center Advantage Health Plan, Improperly named as "Equian, LLC" | |
| In Re: <br><br> **FLOYD T. BELL, JR.,** <br><br> Debtor. | Case No.: 13-28454 RG <br><br> Hon. Rosemary Gambardella <br><br> Chapter: 7 <br><br> Hearing Date: May 20, 2019 at 10:00 a.m. |

**SPECIAL APPEARANCE AND RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION FOR AN ORDER COMPELING DISGORGEMENT OR TURNOVER OF PAYMENTS MADE FROM PERSONAL INJURY SETTLEMENT**

Now Comes Hackensack University Medical Center, as plan administrator and sponsor of the Hackensack University Medical Center Advantage Health Plan (the "Plan"), appearing specially by Counsel Kolb Clare & Arnold, PSC, Rachael Banks, and for its Response in Opposition to the Trustee's improper Motion, above, states as follows:

1. The Plan sponsor and administrator is the fiduciary of a self-funded employee benefit plan which provides health benefits to eligible participants and dependents of employees of Hackensack University Medical Center. See 2011 SPD, attached hereto.

2. The Plan is a self-funded employee benefit Plan, subject to ERISA. See page 9 of the Summary Plan Description, attached hereto.

3. On or about October 10, 2012, while a participant in the Plan, debtor Floyd Bell, Junior was injured in a fall on property maintained or repaired by English Paving Company (Defendant).

4. On information and belief, Plan participant Floyd Bell filed a Chapter 7 Bankruptcy on August, 22, 2013.

5. Neither Equian, LLC, QualCare, nor the Hackensack University Medical Center Advantage Health Plan are listed as Creditors in the Bankruptcy.

6. On information and belief, Plan participant Floyd Bell filed suit against Defendant in New Jersey State court in 2013, and settled the case in June, 2017.

7. At the time of the settlement, the Plan had extended benefits to Floyd Bell totaling $34,315.18.

8. The Plan used a Claims Administrator, QualCare, to administer claims submitted to the Plan.

9. The Claims Administrator retained Equian, LLC as the subrogation and reimbursement agent for the Plan for the purpose of recovering said benefits pursuant to the terms of the Plan.

10. With authority, Equian, LLC agreed to accept $25,000.00 in settlement of the Plan's equitable lien of $34,315.18 for benefits paid on behalf of Floyd Bell for medical benefits related to the 2012 accident.

11. The party with the right to the funds, and the real interest at issue is the Hackensack University Medical Center Advantage Health Plan, and is not Equian, LLC.

12. The applicable plan language, governing recovery of said benefit is listed on page 79 of the attached Summary Plan Description.

13. Pursuant to said language, the participant assigns all rights to recovery to the Plan, and provides the Plan with first priority to any recovery from a third party.

14. While it does not appear that this Court has dealt with the issue of the nature of an employee benefit plan's claim to proceeds of a pre-petition bodily injury claim, Bankruptcy courts which have encountered the claims have found that the liened proceeds are not a part of the Bankruptcy Estate.

15. Pursuant to *In re Bergman*, 467 F.3d 536 (W.D. OK 2006) (attached), and In *Re McGreevy*, 388 B.R. 917 (2008) (attached), the Bankruptcy Courts in Oklahoma found that amounts paid by insurance companies for benefits due to pre-petition accidents were not part of the estate. Of course, those insured plans were subject to state laws regarding subrogation and reimbursement rights.

16. It appears that the issue of a self-funded employee benefit plan came before the United States District Court of Appeals for the 4th Circuit, which found in an unpublished opinion, that a plan subject to Federal Law acquired the same interest, and found that the proceeds subject to the Plan's interest were not property of the Estate. *In Re Carpenter*, 36 Fed. Appx 80 (2002), attached.

17. The cases cited by the Trustee are inapplicable. *In Re Fontaine* and *In Re Colombraro* involve provider liens. The claim by the Plan is for an equitable lien, which attached to any recovery by the employee as soon as benefits were extended.

18. The Plan has not been served and is not otherwise a party in any way to the Bankruptcy, having received no notice of same, claiming no interest in assets of the Estate, and having not been served with process.

Wherefore, Hackensack University Medical Center, as sponsor of the Hackensack University Medical Center Advantage Health Plan requests that the Trustee's motion as to the Plan's interest be denied.

/s/  Rachael E. Banks
RACHAEL E. BANKS
**KOLB CLARE & ARNOLD, PSC**
35 Journal Square, Suite 419
Jersey City, NJ 07306
Telephone:    201-253-1968
Facsimile:    844-557-4329
E-mail: rbanks@kcalegal.com
**ATTORNEYS FOR PLAINTIFF**
Hackensack University Medical Center, as plan administrator and sponsor of the Hackensack University Medical Center Advantage Health Plan, Improperly named as "Equian, LLC"

Floyd T. Bell, Jr.
Case No.: 13-28454 RG
Service List

Office of the US Trustee
One Newark Center, Suite 2100
Newark, NJ 07102

Scott S. Rever
WASSERMAN, JURISTA & STOLZ, P.C.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Email: srever@wjslaw.com
Counsel to Donald V. Biase, Chapter 7 Trustee

Donald V. Biase, Chapter 7 Trustee
Biase Associates
225 Millburn Avenue, Suite 207
P.O. Box 1029
Millburn, NJ 07041
Email: dbiase4236@gmail.com

Russell L. Low, Esq.
Low & Low
502 Main St., Suite 304
Hackensack, NJ 07601
E: rbear611@aol.com
Counsel for Debtor

Avi Schild
c/o Atlas Acquisitions LLC
294 Union St.
Hackensack, NJ 07601
E: bk@atlasacq.com
Creditor

Natalie A. Zammitti Shaw, Esq.
Law Offices of Rosemarie Arnold
1386 Palisade Avenue
Fort Lee, NJ 07024
By email nzammittishaw@rosemariearnold.com
Special Personal Injury Counsel

Floyd T. Bell, Jr.
450 River Drive, Apt. 2
Garfield, NJ 07026-3218
Debtor

**In re Bergman, 467 F.3d 536 (2006)**
Bankr. L. Rep. P 80,756, 2006 Fed.App. 0397P

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by In re Burnett, Bankr.W.D.Okla., January 31, 2011

467 F.3d 536
United States Court of Appeals,
Sixth Circuit.

In re: Ernest R. BERGMAN;
Shirley E. Bergman, Debtors.
Bruce Comly French, Trustee for the
Debtor Estate of Ernest Bergman and
Shirley E. Bergman, Plaintif–Appellant,

v.

Steve Frey; Anthem Blue Cross and
Blue Shield; German Mutual Insurance
Company, Defendants–Appellees.

No. 05–4312.
|
Submitted: Sept. 12, 2006.
|
Decided and Filed: Oct. 27, 2006.

**Synopsis**
**Background:** Chapter 7 trustee sued for declaration that insurer that had paid approximately $3,000 in medical expenses for debtor-insureds, before they filed their Chapter 7 petition, was merely a general unsecured creditor. The United States District Court for the Northern District of Ohio, James G. Carr, J., 337 B.R. 616, granted summary judgment in favor of insurer. Trustee appealed.

**[Holding:]** The Court of Appeals, Merritt, Circuit Judge, held that any money that debtors recovered in their civil suit against alleged tortfeasor, up to the amount paid by insurer, was not property of the estate.

Affirmed.

West Headnotes (3)

**[1]    Federal Courts**
⚬ Property

Unless a federal interest is at issue, property rights are defined by state law.

5 Cases that cite this headnote

**[2]    Bankruptcy**
⚬ Co-debtors;subrogation

The subrogation rights conferred by an insurance contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured.

2 Cases that cite this headnote

**[3]    Bankruptcy**
⚬ Tort claims
**Bankruptcy**
⚬ Co-debtors;subrogation

Under Ohio law, health insurer that paid approximately $3,000 in medical expenses for its insureds, before they filed their Chapter 7 bankruptcy petition, had subrogation interest, pursuant to insurance policy language, in any proceeds that insureds received by virtue of personal injury claims against alleged tortfeasor, for its prepetition expenditures on insureds' behalf; thus, any money that insureds recovered in their civil suit against alleged tortfeasor, up to the amount paid by insurer, was not "property of the estate," for purpose of insureds' bankruptcy proceeding. 11 U.S.C.A. § 541.

3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*537  ON BRIEF:** Bruce Comly French, Lima, Ohio, Ryan Q. Ashworth, Ada, Ohio, for Appellant. Louis F. Solimine, Thompson Hine, Cincinnati, Ohio, Curtis L. Tuggle, Thomson Hine, Cleveland, Ohio, for Appellees.

Before: MERRITT and MOORE, Circuit Judges; COLLIER, Chief District Judge.[*]

Case 13-28454-RG    Doc 21    Filed 05/13/19    Entered 05/13/19 18:29:09    Desc Main
Document      Page 7 of 18

In re Bergman, 467 F.3d 536 (2006)
Bankr. L. Rep. P 80,756, 2006 Fed.App. 0397P

**OPINION**

MERRITT, Circuit Judge.

On March 23, 2003, prior to filing bankruptcy, Ernest and Shirley Bergman were involved in an automobile accident. The Bergmans' medical insurer, Anthem Blue Cross and Blue Shield provided coverage for approximately $3,000 in medical expenses incurred by the couple arising from the accident. After the Bergmans filed a Chapter 7 bankruptcy petition, the trustee initiated a personal injury lawsuit on behalf of the debtor estate against Steve Frey, the other party to the automobile accident, seeking in excess of $100,000 in damages. The issue in the present action is whether Anthem, via a subrogation clause in the Bergmans' insurance policy, acquired a pre-petition interest in the first $3,000 the Bergmans may obtain from Frey. The District Court held that it did. The Trustee argues that Anthem did not acquire a pre-petition interest and that the insurer should properly be classified as a general unsecured creditor. For the reasons explained below, the decision of the District Court is affirmed.

The Bergmans' insurance policy includes a subrogation clause, which provides:

> We [Anthem] have the right to recover payments we make on your behalf from any party responsible for compensating you for your injuries. The following apply: We have first priority for the full amount of benefits we have paid from any recovery regardless of whether you are fully compensated, and regardless of whether the payments you receive make you whole for your losses and injuries.

After the bankruptcy commenced, the Trustee filed a personal injury suit on behalf of the debtor estate against Frey, seeking more than $100,000 in damages. The Trustee also initiated an adversary complaint against Anthem, asking the bankruptcy court to declare the Bergmans' insurer a general unsecured creditor. The Bankruptcy Court consolidated both actions into a single proceeding and the District Court withdrew the case from the Bankruptcy when Frey demanded a jury trial. In the District Court, the Trustee moved for a judgment on the pleadings and Anthem cross-moved for summary **\*538** judgment. The District Court granted Anthem's motion, holding that under Ohio law the insurer had a pre-petition property interest in any recovery that the Bergmans may receive arising out their accident with Frey.

**[1]**  We review the District Court's grant of summary judgment de novo. The issue presented is whether an insurer's contractual subrogation rights create a property right in the insurer, so that this contractual right is not properly included in the bankruptcy estate. The Bankruptcy Code defines the property of a debtor's estate as "all legal or equitable interests of the debtor in property at the outset of the case." 11 U.S.C. § 541(a)(1). Unless a federal interest is at issue, property rights are defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Here, the court must look to state law to determine whether, at the outset of the Bergmans' bankruptcy case, the debtors possessed a legal or equitable interest in any potential recovery from Steve Frey.

The Ohio Supreme Court confronted this issue outside of the bankruptcy context in a dispute between a medical insurer and its insured in *Blue Cross and Blue Shield v. Hrenko,* 72 Ohio St.3d 120, 647 N.E.2d 1358 (1995). In *Hrenko,* the insurer paid for medical expenses incurred by its insured as a result of an automobile accident. The other party to the accident was not insured, so Hrenko pursued a claim under the uninsured motorist provision in his automotive insurance policy. The medical insurance company sued, arguing that the policy's subrogation clause entitled it to reimbursement for the money it had expended on behalf of its insured.[1] The Supreme Court agreed, rejecting Hrenko's arguments that his medical insurer's subrogation rights existed exclusively against the tortfeasor or tortfeasor's insurer and that the insurer's subrogation rights were contrary to public policy. *Id.* at 1360. The Court held that the plain meaning of the contract language allowed the insurer to recover directly from compensation the insured received from any third party. *Id.* at 1359.

**[2]**  The subrogation rights conferred by contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured. In *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), an insurance company provided surety bonds for

Case 13-28454-RG    Doc 21    Filed 05/13/19    Entered 05/13/19 18:29:09    Desc Main
Document    Page 8 of 18

In re Bergman, 467 F.3d 536 (2006)
Bankr. L. Rep. P 80,756, 2006 Fed.App. 0397P

a construction company that undertook a government project. *Id.* at 133, 83 S.Ct. 232. The bonds were to be used to compensate laborers and material suppliers at the project's conclusion if the company failed to meet its obligations. *Id.* As the project progressed, the government also retained a portion of the payments due to the construction company under the contract. *Id* at 134, 83 S.Ct. 232. Before the project was completed, the construction company terminated the contract and filed bankruptcy, leaving a second company to finish the work. *Id.* At the project's conclusion, the insurance company fulfilled its obligations by paying the full value of the surety bonds to creditors of the first construction company. *Id.* At this point the government turned over the money it had withheld under the contract to the Trustee for the bankrupt construction firm. *Id.*

**\*539** The insurance company intervened in the bankruptcy claiming that the money belonged to it and not the bankruptcy estate under the subrogation clause in the surety bonds. *Id.* at 136, 83 S.Ct. 232. The Supreme Court enforced the subrogation clause, holding that "Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not part of the bankrupt's property and do not vest in the trustee." *Id.* at 135–36, 83 S.Ct. 232. Since the insurance company had a contractual right to subrogation before its insured filed bankruptcy, the Trustee could not properly acquire it for the benefit of the general creditors.

A more recent case, adjudicated under the Bankruptcy Code and Ohio law, reached the same result. *In re DuBose,* 174 B.R. 260 (Bankr.N.D.Ohio 1994). In *DuBose,* the husband debtor was involved in an automobile accident prior to the couple's bankruptcy filing. Like Anthem in the present case, Mr. Dubose's medical insurer covered medical expenses he incurred as a result of the accident. While their bankruptcy was pending, the debtors received a personal injury settlement from the other party to the accident and reimbursed their medical insurer pursuant to the subrogation clause in their policy. When the Trustee learned of the payment to the medical insurer, he moved to set aside the post-petition transfer for the benefit of the couple's unsecured creditors.

The Bankruptcy Court denied the Trustee's motion, finding that the monies owed to the insurance company under a subrogation clause were never part of the bankruptcy estate. The court reasoned that the subrogation clause rendered the payment to the medical insurer compensation for a "separate and independent cause of action between [the debtors' insurer] and the tortfeasor." *Id.* at 262. The court bluntly observed that "the Debtors did not have an interest in the transaction" between the tortfeasor and their insurer. *Id.*

**[3]** Under Ohio law, Anthem acquired a pre-petition property right in any future recovery by the Bergmans arising from the March 2003 accident as soon as it expended money for their medical care. *Hrenko* makes clear that the property rights of an insurer are governed by the policy language. The subrogation clause in the Bergman's policy stated, "We [Anthem] have the right to recover payments we make on your behalf from any party responsible for compensating you for your injuries." This language is the functional equivalent of the clause the Ohio Supreme Court found to create an enforceable property right in the Hrenko's medical insurer. Since the property right immediately vested in Anthem, it was not included in the Bergmans' bankruptcy estate under § 541 of the Bankruptcy Code.

This result comports with the Supreme Court's reasoning and result in *Pearlman* where the language of the surety bond vested a property right in the bond's issuer outside of bankruptcy that put the money facially owed to the debtor beyond the reach of the Trustee. *DuBose* likewise supports the finding that the insurer owns an interest in the money recovered by the insured up to the amount of the insurer's expenses. Since this interest accrues to the insurer alone, it can never become part of the bankruptcy estate.

The Trustee argues that the policy language gives Anthem a right of reimbursement but not subrogation. This interpretation is not compatible with the plain meaning of the clause. The statement that Anthem "may recover payments," clearly indicates that it has the contractual right to seek payments directly. There is nothing in the clause that suggests that **\*540** Anthem must wait until the Bergmans are compensated in order to enforce its rights under the policy. The Trustee is correct that the presence of a reimbursement clause, instead of the subrogation language, may alter this analysis. Such a reading of this clause, however, is not plausible.

In re Bergman, 467 F.3d 536 (2006)
Bankr. L. Rep. P 80,756, 2006 Fed.App. 0397P

Case 13-28454-RG    Doc 21    Filed 05/13/19    Entered 05/13/19 18:29:09    Desc Main
Document      Page 9 of 18

For the foregoing reasons, we affirm the judgment of the district court.

**All Citations**

467 F.3d 536, Bankr. L. Rep. P 80,756, 2006 Fed.App. 0397P

Footnotes

| | |
|---|---|
| * | The Honorable Curtis Lynn Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation. |
| 1 | The subrogation clause in Hrenko's policy stated, "To the extent we provide or pay for Covered Services, we assume your legal rights to any recovery of expenses incurred. To the extent we provide or pay benefits for Covered Services, you must repay us amounts recovered by suit, settlement or otherwise from any third party or his insurer." 647 N.E.2d at 1359. |

**End of Document**            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment
Distinguished by Callery v. U.S. Life Ins. Co. in City of New York, 10th Cir.(Utah), December 10, 2004

36 Fed.Appx. 80
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also Fourth
Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals,
Fourth Circuit.

In re Tina L. CARPENTER, Debtor.
Wal-Mart Stores, Incorporated, Plaintiff-Appellee,
v.
Tina L. Carpenter, Defendant-Appellant.

No. 00-2348.
|
Argued May 8, 2001.
|
Decided June 3, 2002.

**Synopsis**
Chapter 7 debtor's employer, in its capacity as sponsor and administrator of employee benefit plan, sought determination as to its lien rights in proceeds from settlement of debtor's third-party tort claims. The Bankruptcy Court, Stephen C. St. John, J., 245 B.R. 39, found that it was appropriate, as matter of federal common law, to impose equitable lien on proceeds of debtor's recovery, and entered judgment in favor of employer. Debtor appealed. The District Court, Smith, J., 252 B.R. 905, affirmed. Debtor appealed. The Court of Appeals held that employer had an enforceable equitable lien on personal injury settlements proceeds that debtor received post-petition.

Affirmed.

West Headnotes (1)

**[1]**    **Labor and Employment**
        Subrogation to or Reimbursement of Plan or Insurer

Employer, which was the sponsor and administrator of a health benefits plan that was governed by Employee Retirement Income Security Act (ERISA) and that had a reimbursement provision, had an enforceable equitable lien on personal injury settlement proceeds received post-petition by Chapter 7 debtor-employee, who had received medical benefits pursuant to the plan after she was involved in automobile accident. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

6 Cases that cite this headnote

**\*81** Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca B. Smith, District Judge. (CA-00-143, BK-98-26470-SCS, AP-98-01290).

**Attorneys and Law Firms**

**ARGUED:** Carolyn Louise Camardo, Marcus, Santoro, Kozak & Melvin, P.C., Portsmouth, Virginia, for Appellant. Michael Stephen Cessna, Corporate Appellate, Wal-Mart In-House Litigation Team, Bentonville, Arkansas, for Appellee. **ON BRIEF:** Kyle L. Holifield, Corporate Appellate, Wal-Mart In-House Litigation Team, Bentonville, Arkansas, for Appellee.

Before MICHAEL and GREGORY, Circuit Judges, and ALARCON, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished PER CURIAM opinion. Judge MICHAEL wrote a dissenting opinion.

OPINION

PER CURIAM.

**\*\*1** The bankruptcy and district courts held that Wal-Mart Stores, Inc., the sponsor and administrator of a health benefits plan with a reimbursement provision, had

an equitable lien on personal injury settlement proceeds received by a Wal-Mart employee, Tina L. Carpenter, after she filed for bankruptcy. We affirm.

The facts are not in dispute. On November 13, 1994, Carpenter was seriously injured in an automobile wreck caused by a third party. At the time of the accident, Carpenter worked for Wal-Mart and participated in the Wal-Mart Group Health Plan (the Plan). Wal-Mart sponsors and administers the Plan, which is a self-funded, self-insured health benefits plan. The Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA). Although a copy of the Plan was not introduced into evidence, the parties stipulated as follows: "Pursuant to the terms of the plan, in the event of the payment of benefits to a participant due to an injury to such participant caused by acts of a third-party, the plan retains the right of subrogation to claims of the participant against such third-party, and the right to reimbursements for recoveries of the participant from such third-party." On July 6, 1995, after the accident, Carpenter signed a "Subrogation Rights Notification Acknowledgment," acknowledging that she was aware of the Plan's subrogation and reimbursement provision.

Carpenter's medical expenses stemming from the accident totaled nearly $300,000, and the Plan paid her $106,935.11 in benefits. Carpenter was overwhelmed by her medical bills, and she filed an involuntary Chapter 7 bankruptcy petition on September 1, 1998. On October 13, 1998, within a few weeks of her bankruptcy filing, Carpenter **\*82** received $125,000 in settlement from the third party who had caused her injuries. Shortly thereafter, Carpenter amended her bankruptcy schedules to reflect the settlement and to claim the proceeds as exempt under 11 U.S.C. § 522(b)(2) and Va.Code Ann. § 34-28.1. (Va.Code Ann. § 34-28.1 exempts the proceeds of personal injury settlements.) On November 25, 1998, Wal-Mart filed an adversary proceeding against Carpenter, seeking (1) a declaratory judgment that it has an equitable lien on the settlement proceeds under the terms of the Plan and (2) an order requiring Carpenter to pay the settlement proceeds to Wal-Mart.

The bankruptcy court held a short bench trial on Wal-Mart's complaint. The court found as follows: "In contracting for the right to reimbursement, Carpenter evidenced an intent to charge particular property, namely the proceeds of any subsequent recovery she would receive, with a particular obligation, namely the obligation to repay amounts paid out by Wal-Mart under the Plan. Carpenter further evidenced her assent to that provision by subsequently signing the Acknowledgment." *In re Carpenter,* 245 B.R. 39, 47 (Bankr.E.D.Va.2000). Based on this, the bankruptcy court found that Wal-Mart has an equitable lien on the proceeds of Carpenter's recovery. The court, in other words, "recognized Wal-Mart's security interest in [Carpenter's] settlement proceeds and ... determined that nothing prevents Wal-Mart from foreclosing on that interest." *Id.* at 53. Finally, the bankruptcy court ordered Carpenter to pay over the settlement proceeds (less attorneys fees and costs) to Wal-Mart. *Id.* The district court affirmed, *see In re Carpenter,* 252 B.R. 905 (E.D.Va.2000), and Carpenter appeals to us.

**\*\*2** After oral argument we placed this appeal in abeyance pending the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), a case that deals with the extent to which ERISA authorizes a plan administrator to enforce a plan's reimbursement provision. In *Knudson* the personal injury proceeds had been paid directly into a trust, and the money therefore was not in the hands of the ERISA plan beneficiaries. *Id.* at 715. The plan brought a contract action against the beneficiaries, seeking legal relief under the plan's reimbursement provision. The Supreme Court held that ERISA § 502(a)(3) did not authorize the action because the plan was seeking legal relief. *Id.* at 719. The Court indicated that if the plan administrator had been seeking an equitable lien on particular property in the hands of the plan beneficiaries, such a suit would sound in equity and would be authorized by § 502(a)(3). *Id.* at 714-15. *Knudson* therefore does not affect the conclusion of the bankruptcy and district courts that Wal-Mart has an enforceable equitable lien on Carpenter's settlement proceeds. We agree with the conclusion of the bankruptcy and district courts, and we affirm on their reasoning. *See In re Carpenter,* 245 B.R. 39 (Bankr.E.D.Va.2000); *In re Carpenter,* 252 B.R. 905 (E.D.Va.2000).

*AFFIRMED.*

MICHAEL, Circuit Judge, dissenting:
**\*\*2** I respectfully dissent because I do not believe that Wal-Mart presented sufficient evidence to allow an

equitable lien to be imposed on Carpenter's personal injury settlement proceeds. The Plan was not placed in evidence, and the bankruptcy court acknowledged that "it cannot be ascertained from the record whether the terms of the Plan specifically call for the imposition of an equitable lien." **\*83** *In re Carpenter,* 245 B.R. 39, 47 (Bankr.E.D.Va.2000). Nevertheless, the bankruptcy court found (and the district court agreed) that the existence of the reimbursement provision, and Carpenter's signed acknowledgment of that provision, evidence her intent to subject the settlement proceeds to a lien. This evidence falls short of the strict proof of intent necessary to create a security interest giving rise to an equitable lien. *See, e.g., In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 119 (Bankr.S.D.N.Y.1982).

**All Citations**

36 Fed.Appx. 80, 2002 WL 1162277, 28 Employee Benefits Cas. 2043

---

End of Document © 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by In re Burnett, Bankr.W.D.Okla., January 31, 2011

388 B.R. 917
United States Bankruptcy Court, D. South Dakota.

In re Stephen J. McGREEVY and
Susan S. McGreevy, Debtors.
John S. Lovald, Trustee, Plaintiff,
v.
Stephen J. McGreevy, Susan S. McGreevy,
Avera McKennan Hospital, Wellmark
Blue Cross Blue Shield of South Dakota,
and United Fire Group, Defendants.

Bankruptcy No. 04–41113.
|
Adversary No. 07–4050.
|
May 16, 2008.

**Synopsis**
**Background:** Chapter 7 trustee filed complaint for determination of competing interests in proceeds from settlement of debtor's prepetition personal injury cause of action.

**[Holding:]** The Bankruptcy Court, Charles L. Nail, Jr., J., held that bankruptcy estate's interest in proceeds from settlement of Chapter 7 debtor's prepetition personal injury cause of action was limited by insurer's subrogation interest for any medical benefits it paid on debtor's behalf either pre- or postpetition.

So ordered.

West Headnotes (8)

**[1]**   **Bankruptcy**
          Effect of state law in general

          While state law determines nature and extent of debtor's interest in property, bankruptcy statute dictates to what extent debtor's interest in property becomes property of the estate. 11 U.S.C.A. § 541.

          1 Cases that cite this headnote

**[2]**   **Bankruptcy**
          Legal or equitable interests in general
          **Bankruptcy**
          Future interests

          "Property of the estate" is broadly defined to encompass conditional, future, speculative and equitable interests of debtor. 11 U.S.C.A. § 541(a).

          Cases that cite this headnote

**[3]**   **Bankruptcy**
          In general; standing
          **Bankruptcy**
          Rights of Action; Contract Rights Generally

          Property of the estate includes all causes of action that debtor could have brought at time petition was filed, which prepetition causes of action the case trustee has standing to assert. 11 U.S.C.A. §§ 541(a)(1), 704.

          Cases that cite this headnote

**[4]**   **Bankruptcy**
          Title and Rights of Trustee or Debtor in Possession, in General

          Trustee stands in debtor's shoes and may not assert interests or rights greater than what the debtor himself possessed on petition date.

          1 Cases that cite this headnote

**[5]**   **Bankruptcy**
          Title and Rights of Trustee or Debtor in Possession, in General

          Whenever an interest in property is limited in debtor's hands, it is equally limited in hands of trustee or estate representative.

          Cases that cite this headnote

| | |
|---|---|
| **[6]** | **Insurance**<br>👉 Subrogation Against Third Parties; Right to Proceeds of Action or Settlement<br>Under South Dakota law, insurer may be entitled to subrogation, either by contract or in equity, for amount of indemnity paid.<br>Cases that cite this headnote |
| **[7]** | **Bankruptcy**<br>👉 After-acquired property;proceeds; wages and earnings<br>**Bankruptcy**<br>👉 Presumptions and burden of proof<br>Burden of establishing that particular asset was included in "property of the estate" rested with Chapter 7 trustee; however, upon showing that asset in question was estate asset, as proceeds of prepetition personal injury claim that debtor possessed on date his petition was filed, burden shifted to debtor's insurer to show that estate's interest in settlement funds was limited by its subrogation interest. 11 U.S.C.A. § 541(a)(1), (d).<br>1 Cases that cite this headnote |
| **[8]** | **Bankruptcy**<br>👉 Co-debtors;subrogation<br>Bankruptcy estate's interest in proceeds from settlement of Chapter 7 debtor's prepetition personal injury cause of action was limited by insurer's subrogation interest for any medical benefits it paid on debtor's behalf either pre- or postpetition; debtor's interest in settlement proceeds would have been limited by insurer's subrogation interest if debtor had not filed for bankruptcy relief, and debtor's interest came into bankruptcy estate subject to these same limitations. 11 U.S.C.A. § 541.<br>1 Cases that cite this headnote |

**Attorneys and Law Firms**

**\*918** James A. Craig, Craig Law Office, Sioux Falls, SD, for Debtors.

John S. Lovald, Pierre, SD, for trustee.

DECISION RE: SUBROGATION RIGHTS HELD BY DEFENDANT WELLMARK BLUE CROSS BLUE SHIELD OF SOUTH DAKOTA

CHARLES L. NAIL, JR., Bankruptcy Judge.

The matter before the Court is Trustee–Plaintiff John S. Lovald's Complaint to Determine Extent and Priority of Liens. This decision deals with his complaint only as it relates to Defendant Wellmark Blue Cross Blue Shield of South Dakota's subrogation claim. This is a core proceeding under 28 U.S.C. § 157(b)(2). This decision and subsequent order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, the settlement funds received by Trustee–Plaintiff Lovald arising from the subject July 26, 2004 accident are not estate property to the extent of Defendant Wellmark Blue Cross Blue Shield of South Dakota's subrogation claim arising from medical debts it paid or is obligated to pay on Debtor Stephen McGreevy's behalf.

I.

Trustee–Plaintiff John S. Lovald ("Trustee Lovald") and Defendant Wellmark **\*919** Blue Cross Blue Shield of South Dakota ("Wellmark") have stipulated Stephen J. McGreevy ("McGreevy") was involved in a car accident on July 26, 2004. As a result of the accident, McGreevy sustained certain personal injuries requiring medical care and prescription drugs. At the time of the accident, McGreevy had health care coverage through Wellmark pursuant to a "Blue Select" Benefits Certificate and drug benefit coverage through Wellmark pursuant to a "Blue Rx" Benefits Certificate. On behalf of McGreevy and pursuant to the health insurance policy, Wellmark paid $2,682.46 to medical care providers and for prescription drugs for the treatment of McGreevy's personal injuries proximately caused by the accident.[1] All payments but one were made by Wellmark after August 27, 2004, the date McGreevy and his wife Susan S. McGreevy filed

a joint chapter 7 petition in bankruptcy. The one pre-petition payment made by Wellmark was $14.46 for a prescription. The post-petition payments by Wellmark on McGreevy's behalf for post-petition medical services or prescriptions totaled $2,668.00.

This Court approved, on July 31, 2007, a settlement of $38,534.95 for McGreevy's personal injury claim from the accident.[2] After the fees for the attorney employed by the estate to handle the personal injury claim ($13,959.12) and the amount Debtors have claimed exempt ($3,596.00) are deducted, the remaining balance of the settlement proceeds is $20,979.83.

Trustee Lovald and Wellmark presented three documents by stipulation: the two insurance policies and a statement of the medical claims Wellmark paid on McGreevy's behalf. McGreevy's "Blue Select" policy with Wellmark provided, *inter alia,* once McGreevy "receive[d] benefits under this certificate arising from an illness or injury, [Wellmark assumed] any legal right [McGreevy had] to collect compensation, damages, or any other payment related to the illness or injury, including benefits from ... [t]he responsible person's insurer." Under the policy, McGreevy could not "compromise, settle, surrender, or release any claim or right of recovery ..., without getting [Wellmark's] written permission." The policy also provided McGreevy "must reimburse [Wellmark] to the extent of benefit payments made under this certificate if payment is received from the other [responsible] party or parties[,]" and "[t]he amount of [Wellmark's] subrogation interest shall be paid first from any funds recovered on your behalf from any source, without regard to whether you have been made whole or fully compensated for your losses." The prescription drug policy had a similar subrogation provision.

**\*920** The record in the related main case, Bankr.No. 04–41113, also establishes Wellmark received notice of Trustee Lovald's proposed settlement through counsel. Wellmark did not object to the proposed settlement; others did. On July 26, 2007, Trustee Lovald's proposed settlement was approved as to the amount, but the Court directed the "[r]ights or interests in the settlement proceeds shall be determined by subsequent appropriate adversary proceedings." The attendant order entered July 31, 2007 reserved ruling on the interests of the objecting parties and the subrogation claimants.

On August 10, 2007, Trustee Lovald commenced an adversary proceeding against several defendants, including Wellmark, and asked the Court to sort out the various interests in the settlement funds. As to Wellmark, Trustee Lovald said:

> Defendant Wellmark Blue Cross Blue Shield is asserting a subrogation interest in the settlement proceeds, superior to the bankruptcy estate's interest, in the amount of $2,662.46, for post petition medical payments it made on behalf of Stephen McGreevy, pursuant to its insurance contract with Stephen McGreevy.
>
> ....
>
> That none of the claims referenced in paragraphs X through XIII were of record when the bankruptcy was filed, and Trustee's interest in the proceeds is superior to those claims pursuant to 11 USC 544(a)(2).

In its answer, Wellmark admitted its interest was not filed in any public record pre-petition but denied the trustee's interest in the settlement proceeds under 11 U.S.C. § 544(a)(2) was superior to its subrogation interest. It asked to be paid $2,667.46 from the settlement proceeds.[3]

Based on their briefs, the parties, though perhaps reluctantly so by Trustee Lovald, agreed the settlement proceeds, to the extent of the $14.46 Wellmark paid pre-petition for a prescription, did not become property of the bankruptcy estate. The Court concurs. The tougher, remaining issue is whether the settlement funds necessary to make Wellmark whole for the post-petition payments it made related to the July 26, 2004 accident are also excluded from property of the estate.

Wellmark argues it has a constructive trust on the settlement funds for its post-petition payments under S.D.C.L. § 55–1–11 and the funds in trust are excluded from property of the estate under 11 U.S.C. § 541(d) as property in which Debtors held only legal title and not an equitable interest on the petition date. Trustee Lovald challenges the Bankruptcy Court's ability to impose a constructive trust for post-petition payments and the appropriateness of doing so at this time.

## II.

 **[1]**  **[2]**  When a debtor files a petition in bankruptcy, all his legal and equitable interests are transferred to the bankruptcy estate. 11 U.S.C. § 541(a). While state law determines the nature and extent of a debtor's interest in property, *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), § 541 dictates to what extent the debtor's interest becomes property of the bankruptcy estate. *Lindquist v. JNG Corp. (In re Lindell),* 334 B.R. 249, 253 (Bankr.D.Minn.2005)(citing *N.S. Garrott and Sons v. Union Planters National Bank (In re N.S. Garrott* **\*921** *and Sons),* 772 F.2d 462, 466 (8th Cir.1985)). Section 541(a) defines property of the estate broadly, and encompasses conditional, future, speculative, and equitable interests of the debtor. *U.S. ex rel. Gebert v. Transport Administrative Services,* 260 F.3d 909, 913 (8th Cir.2001)(cites therein).

 **[3]**  **[4]**  Property of the bankruptcy estate includes all causes of action the debtor could have brought at the time of the petition, which the case trustee, under 11 U.S.C. § 704, then has standing to assert. *Moratzka v. Morris (In re Senior Cottages of America, L.L.C.),* 482 F.3d 997, 1001 (8th Cir.2007) (citing *Mixon v. Anderson (In re Ozark Rest. Equip. Co.*), 816 F.2d 1222, 1225 (8th Cir.1987)); 11 U.S.C. § 323 (trustee, as representative of the estate, has capacity to sue and be sued). The trustee stands in the debtor's shoes and may not assert interests or rights greater than what the debtor himself possessed on the petition date. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05 and nn. 8, 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *Drewes v. Vote (In re Vote),* 276 F.3d 1024, 1026 (8th Cir.2002); and *Constellation Dev. Corp. v. Dowden (In re B.J. McAdams, Inc.),* 66 F.3d 931, 935 (8th Cir.1995).

 **[5]**  **[6]**  As this Court noted in *In re David L. and Sharon R. Klundt,* Bankr.No. 05–42197, slip op. at 12, 2008 WL 591072 (Bankr.D.S.D. March 3, 2008), § 541(d) essentially provides whenever an interest in property is limited in a debtor's hands, it is equally limited in the hands of the bankruptcy estate. *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.),* 306 B.R. 630, 634 (8th Cir. BAP 2004). One such limiting interest recognized in South Dakota is a subrogation interest held by an insuror. *Schuldt v. State Farm Mutual Automobile Ins. Co.,* 89 S.D. 687, 238 N.W.2d 270, 271 (1975). As discussed therein, an insuror may be entitled to subrogation either by contract or in equity for the amount of the indemnity paid. *Id.*

 **[7]**  In this adversary proceeding, the burden of establishing a particular asset is property of the bankruptcy estate rests with Trustee Lovald. *See Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990) (cites therein), and *DeBold v. Case (In re Tri–River Trading, LLC),* 329 B.R. 252, 263–64 (8th Cir. BAP 2005), *aff'd,* 452 F.3d 756 (8th Cir.2006). The burden shifts to Wellmark to show the estate's interest in the settlement funds is limited by its subrogation interest. *Tri–River Trading,* 329 B.R. at 263.

## III.

 **[8]**  The Court concludes the bankruptcy estate's interest in the settlement funds is limited by Wellmark's subrogation interest. Based on the provisions in the Wellmark policies, it is clear Debtors' interest in the settlement funds was limited by Wellmark's right to be reimbursed from any recovery by the alleged tort-feasor. Thus, the estate's interest in the settlement funds is equally limited. *See Farmers Ins. Group v. Krommenhoek (In re Hiatt),* 2000 WL 33712218 (Bankr.D.Idaho June 30, 2000); *Sheils v. City of Wilkes–Barre (In re Cole),* 344 B.R. 44 (Bankr.M.D.Pa.2005); and *In re Squyres,* 172 B.R. 592 (Bankr.C.D.Ill.1994).

The Court further concludes the petition date did not alter the extent of Wellmark's subrogation interest. That is, even if Wellmark had not paid any accrued medical claims by the petition date, its interest in the prospective settlement funds must still be recognized to the extent of all medical claims it has paid or may pay arising from the July 26, 2004 accident. To hold otherwise would allow a bankruptcy debtor's chosen petition date to alter **\*922** the impact of the subrogation interest. Since McGreevy could not manipulate, to his benefit, Wellmark's subrogation interest outside bankruptcy, the Court cannot countenance a different result when Trustee Lovald stepped into Debtor Stephen McGreevy's shoes on the petition date. *French v. Frey (In re Bergman),* 467 F.3d 536, 538 (6th Cir.2006) (subrogation rights conferred by contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured).

The Court recognizes this conclusion means the bankruptcy estate and any subrogated insuror are joint

interest holders when a chapter 7 debtor's personal injury claim needs to be litigated or mediated post-petition. *See Bowen v. American Family Ins. Group,* 504 N.W.2d 604, 605–06 (S.D.1993) (quoting therein *Parker v. Hardy,* 73 S.D. 247, 41 N.W.2d 555, 556 (1950)) (subrogated interest may not be split from the insured's cause of action against a tort-feasor). The case trustee and insuror will have to work cooperatively and may have to share costs in bringing the personal injury action forward.[4] *Bowen,* 504 N.W.2d at 605–07 (subrogated interest holder must bear proportionate share of costs of recovery). Their task in determining each party's respective interest in the resulting settlement funds or judgment amount will be further complicated because the debtor's total medical claims may not yet be known. To the extent treatment covered by the insurance policy is continuing, *i.e.,* if the policy limits have not been reached, the parties will need to estimate the amount of reimbursable post-petition medical claims or ask the Court to do so through an adversary proceeding to determine property of the estate. *See* Fed.R.Bankr.P. 7001(2)(interests in property determined through an adversary proceeding). All parties, including the debtor, will need to be watchful to ensure any settlement does not prematurely relieve the insuror from paying valid future medical claims. *See Hart v. State Farm Mutual Automobile Ins. Co.,* 248 N.W.2d 881, 883–84 (S.D.1976).

The result reached today fosters precisely what the equitable and contractual doctrines of subrogation are designed to foster. There is no "double recovery" by Debtors and the bankruptcy estate from both the insurance proceeds and the settlement funds for McGreevy's pre-petition injuries, and the party that should pay for the injuries—the tort-feasor or his or her insuror—is the one who is paying the resulting medical claims. *See In re Cupp,* 383 B.R. 84, 89 (Bankr.E.D.Tenn.2008).

The Court does not determine herein whether Wellmark had on the petition date, or may be given post-petition, a constructive trust on the settlement funds. Wellmark had a contractual subrogated interest in the settlement funds, and South Dakota common law would also give Wellmark an equitable subrogated interest in those funds. Thus, the thorny issue of the interplay between constructive trusts and § 541 need not be addressed in this adversary proceeding. *See, e.g., First American Title Ins. Co. v. Lett (In re Lett),* 238 B.R. 167 (Bankr.W.D.Mo.1999)(discussion of the imposition of constructive trusts in this circuit).

The Court notes the parties did not stipulate whether 11 U.S.C. § 509(a) applies, and the parties did not identify any state *923 subrogation statutes that may apply. Since they did not travel those legal roads, the Court did not either.

Were applicable state law or the insurance contract provisions different, some other result might follow. *See, e.g., Crocker v. Calderon (In re Calderon),* 363 B.R. 537, 541 (Bankr.M.D.Tenn.2003) (in Tennessee, the right of subrogation does not arise until the insured has been made whole, and this requirement cannot be avoided by contract); *In re White,* 297 B.R. 626, 634 (Bankr.D.Kan.2003)(an insuror's statutory right of subrogation accrues or vests only when there has been a recovery by the insured); *Minnesota Trust Co. of Austin v. Yanke (In re Yanke),* 230 B.R. 374, 378 (8th Cir. BAP 1999)(under Minnesota law, a surety's right of subrogation remains inchoate until payment is made, but when payment is made, the surety becomes entitled to pursue its cause of action in subrogation). The Court's decision, however, must acknowledge the absence of a controlling statute specifically governing this subrogation claim or a "made whole" provision in either the subject insurance policies or definitive state law.[5] *See Met Life Auto and Home Ins. Co. v. Lester,* 719 N.W.2d 385 (S.D.2006); *Julson v. Federated Mutual Ins. Co.,* 562 N.W.2d 117 (S.D.1997).

The Court presumes McGreevy has now incurred all medical claims related to the July 26, 2004 accident. To the extent those medical claims were covered by his Wellmark policies, that total sum is excluded from the bankruptcy estate's interest in the settlement funds. Wellmark should also proportionately bear the attorneys' fees and costs associated with the settlement to the extent of prescriptions paid or to be paid, and if it agreed to do so in writing, to the extent of other medical claims paid.[6] If the parties cannot agree on the final amount of Wellmark's share of the settlement within 15 days of the entry of this Decision, they shall request an evidentiary hearing by motion. Otherwise, Trustee Lovald shall submit an agreed order and judgment appropriately dividing the settlement funds between the bankruptcy estate and Wellmark.

**All Citations**

388 B.R. 917

Footnotes

| | |
|---|---|
| 1 | The payments made by Wellmark were less than the sums that had been billed. On the parties' joint exhibit, the amount paid by Wellmark is described as the "Amount Settled." Trustee Lovald and Wellmark did not advise the Court through their stipulated facts whether the portion of the "Bill Charged" that Wellmark did not pay remains an obligation owed by Debtors or the bankruptcy estate. One of Wellmark's post-petition payments was to Defendant Avera McKennan Hospital on October 13, 2006. The hospital had billed $2,099.00, but was paid only $455.20 as the "Amount Settled." |
| 2 | In the main case, Bankr.No. 04–41113, Trustee Lovald's motion to approve the settlement (doc. 26), as well as the attendant fee application by the personal injury litigation attorney (doc. 27), stated the gross settlement amount was $38,534.95. When the order was entered (doc. 52), the amount was stated at $38,594.35. The Court will use $38,534.95 for purposes of this adversary proceeding. If the order is incorrect and if a party deems it worthwhile, that party may file a motion to correct the figure in the settlement order in Bankr.No. 04–41113. |
| 3 | In its answer, Wellmark said its subrogation claim was $2,667.46, $5.00 higher than the $2,662.46 Trustee Lovald had in his complaint. The parties stipulated Wellmark has paid $2,682.46 to medical care providers and for prescription drugs. |
| 4 | McGreevy's "Blue Select" policy with Wellmark provided Wellmark would "not be liable for payment of any share of attorneys' fees or other expenses incurred in obtaining recovery, except as expressly agreed in writing." The Court does not know if any such writing exists and so cannot ascertain Wellmark's liability for any of the legal fees and other costs incurred by the estate in reaching the settlement. *See infra* note 6. |
| 5 | The "health care" policy with Wellmark contained a specific provision saying the policy holder did not have to be made whole before Wellmark's subrogation interest had to be recognized. The prescription drug policy impliedly contained a similar requirement since Wellmark's subrogation interest was based on benefits paid, not benefits paid after the insured was made whole. |
| 6 | Only the "Blue Select" policy provides Wellmark is not liable for any share of attorneys' fees or other expenses incurred in obtaining a recovery unless it so agreed in writing. The prescription drug policy does not appear to include a similar limitation. *See supra* note 4. *See Bowen v. American Family Ins. Group,* 504 N.W.2d 604, 607 (S.D.1993)(insuror may contract away its responsibility to share in proportionate share of attorneys' fees incurred by insured in reaching a settlement). |

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.